**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>UAB XIRGO GLOBAL,<br><br>Defendant. | Civil Action No. 2:25-cv-00126<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Fleet Connect Solutions LLC ("<u>Fleet Connect</u>" or "<u>Plaintiff</u>") files this Complaint against UAB Xirgo Global ("<u>Xirgo</u>" or "<u>Defendant</u>") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "<u>Asserted Patents</u>"), issued by the United States Patent and Trademark Office ("<u>USPTO</u>"):

|   | Patent No. | Reference |
|---|---|---|
| 1. | 7,058,040 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7058040 |
| 2. | 7,260,153 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7260153 |
| 3. | 7,656,845 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7656845 |
| 4. | 7,742,388 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7742388 |
| 5. | 8,005,053 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8005053 |
| 6. | 7,536,189 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7536189 |
| 7. | 7,599,715 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7599715 |

2.    Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3.    Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4.    Upon information and belief, Defendant is a limited liability company duly organized under the laws of Lithuania with its principal place of business located at Chemijos g. 15, Kaunas, 51332 Kauno m. sav., Lithuania.

5.    Upon information and belief, Defendant trades under the brand names "Xirgo," "Xirgo Global," and "Xirgo Technologies."

6.    Upon public information, Xirgo Global owns, operates, advertises, and/or controls the websites https://www.xirgoglobal.com/ and https://xirgo.com/, through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services utilizing infringing systems.

7.    Upon information and belief, Defendant engages in making, using, selling, offering for sale, importing, or otherwise providing, directly or indirectly, in the United States and in this State and District, products and services with features and functionalities that infringe the Asserted Patents.

## JURISDICTION AND VENUE

8.    Fleet Connect repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

9.    This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in TC Heartland does not alter" the alien-venue rule.).

11.     Defendant is subject to this Court's specific and general personal jurisdiction under due process because of Defendant's substantial business in this District, in the State of Texas, and in the United States, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in this state, in this District, and in the United States.

12.     Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District, in this State of Texas, and in the United States, directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District, and in the United States.

13.     Defendant has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities. Defendant regularly sells (either directly or indirectly), its products within this District. For example, Defendant has placed and continues to place the Accused Products into the stream of commerce via an established distribution channel with the knowledge or understanding that such products are being and will continue to be sold in this District and the State of Texas. Defendant is subject to this Court's

specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and District, including its infringing activities alleged herein, from which Defendant derives substantial revenue from goods sold to Texas residents and consumers.

14.    Based upon public information, Defendant owns, operates, advertises, and/or controls the websites https://www.xirgoglobal.com/ and https://xirgo.com/, through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services utilizing infringing systems.

15.    Upon information and belief, Defendant ships and causes to be shipped into the District infringing products and materials instructing their customers to perform infringing activities to its employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within this District.

16.    Defendant markets, sells, and delivers accused products in this district, and has committed acts of infringement in this District.

17.    Defendant commits acts of infringement from this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products in an infringing manner.

18.    Defendant has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

## THE ACCUSED PRODUCTS

19.    Fleet Connect repeats and re-alleges the allegations in Paragraphs above as though

fully set forth in their entirety.

20.     Defendant uses, causes to be used, provides, supplies, or distributes one or more computing devices, including, but not limited to, Xirgo devices, including but not limited to devices that have the following identifiers including, but not limited to, **KP2, KP2 AI camera, KP2-DFC-S, XT3100 Series, XT3100, XT2100, XT2400, XT2500, XT2600, XT3100, XT4500, XT4600, XT4700, XT4900, XT4971A Series, XT53, XT6200, XT6264, XT6300, XG4600, XG3700, XG4780, XG3700 XTCAN SDK, XG3700 LIGHT SDK, XG3700 LIGHT+ SDK, XG3700 STCAN SDK, XG3700 TACHO SDK, FMS500 LIGHT, FMS500 LIGHT+, FMS500 STCAN, FMS500 TACHO, AP1, CRX, CRXS, CP4S 4-Channel DVR, Xirgo CP4S-W 4-Channel HD Vehicle Recorder, SVA055-AM, SVA050-A, SVA027-A, SVA037-A, SVA045-AM, SVA035-A, SVA034-AM, in-cab display/monitor SV7QLCD-T, and the Xirgo Fleet Management software/website, Xirgo Global Logistics software/website, and Xirgo Asset Monitoring & Control systems/software, and Xirgo Tire Pressure Monitoring System software**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality (collectively, the "Accused Products").

21.     On information and belief, the Accused Products perform wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various protocols and implementations, including, but not limited to, Bluetooth, IEEE 802.11, and various subsections thereof, including, but not limited to, 802.11ac and 802.11n.

22.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I: <u>INFRINGEMENT OF U.S. PATENT NO. 7,058,040</u>**

23.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

24.    For purposes of this Count I, the "Accused Products" include Defendant's computing devices, including, but not limited to, the Xirgo products that have the following identifiers, **KP2, XT3100 Series, XG4600, AP1, and XT6300, XG3700, XT2500, XT2400, CRXS, CP4S, XT88, XT4700, XT6200, XT53, XT4900, XT4700, XT4500, XT2100, XG3700 XTCAN SDK, XG3700 LIGHT SDK, XG3700 LIGHT+ SDK, XG3700 STCAN SDK, XG3700 TACHO SDK, FMS500 LIGHT, FMS500 LIGHT+, FMS500 STCAN, FMS500 TACHO, XT2600, XG4780, XT4971A Series, XT6264, XT4600,** and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

25.    The USPTO duly issued U.S. Patent No. 7,058,040 (the "'040 patent") on June 6, 2006, after full and fair examination of Application No. 09/962,718 which was filed September 21, 2001.  The '040 patent is entitled "Channel Interference Reduction."

26.    Fleet Connect owns all substantial rights, interest, and title in and to the '040 patent, including the sole and exclusive right to prosecute this action and enforce the '040 patent against infringers and to collect damages for all relevant times.

27.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '040 patent.

28.    The claims of the '040 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting data transmission methods.

29.     The written description of the '040 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

30.     Defendant has directly infringed the claims of the '040 patent through the end of its term by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products.  For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '040 patent through the end of its term.  As just one example of infringement, Defendant, using the Accused Products, performed a method for data transmission over first and second media that overlap in frequency.  The method included computing one or more time division multiple access (TDMA) time-slot channels to be shared between the first and second media for data transmission; allocating one or more time-slot channels to the first medium for data transmission; allocating one or more of the remaining time-slot channels to the second medium for data transmission; and dynamically adjusting a number of timeslot channels assigned to one of the first and second media during the data transmission to remain within limits of a desired level of service.

31.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

---

## COUNT II: <u>INFRINGEMENT OF U.S. PATENT NO. 7,260,153</u>

32.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

33.    For purposes of this Count II, the "Accused Products" include Defendant's computing devices, including, but not limited to, the Xirgo products that have the following identifiers, **Xirgo CP4S-W 4-Channel HD Vehicle Recorder, and KP2, XT3100 Series, XG4600, AP1, and XT6300, XG3700, XT2500, XT2400, CRXS, CP4S, XT88, XT4700, XT6200, XT53, XT4900, XT4700, XT4500, XT2100, XG3700 XTCAN SDK, XG3700 LIGHT SDK, XG3700 LIGHT+ SDK, XG3700 STCAN SDK, XG3700 TACHO SDK, FMS500 LIGHT, FMS500 LIGHT+, FMS500 STCAN, FMS500 TACHO, XT2600, XG4780, XT4971A Series, XT6264, XT4600**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

34.    The USPTO duly issued U.S. Patent No. 7,260,153 (the "'153 patent") on August 21, 2007, after full and fair examination of Application No. 10/423,447, which was filed on April 28, 2003.  The '153 patent is entitled "Multi Input Multi Output Wireless Communication Method and Apparatus Providing Extended Range and Extended Rate Across Imperfectly Estimated Channels."

35.    Fleet Connect owns all substantial rights, interest, and title in and to the '153 patent, including the sole and exclusive right to prosecute this action and enforce the '153 patent against infringers and to collect damages for all relevant times.

36.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '153 patent.

37.    The claims of the '153 patent are not directed to an abstract idea and are not limited to

well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

38.    The written description of the '153 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

39.    Defendant has directly infringed the claims of the '153 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products. For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '153 patent.  As just one example of infringement, Defendant, using the Accused Products, performed a method for evaluating a channel of a multiple-input multiple-output ("MIMO") wireless communication system allowing two or more communication devices with multiple radiating elements to transmit parallel data sub-streams which defines a channel matrix metric of cross-talk signal-to-noise ("SNR") for the subs-streams, estimates the channel matrix metric, performs a singular value decomposition ("SVD") of the channel matrix metric estimate to calculate estimated channel singular values, and using the channel matrix metric and estimated channel singular values to calculate a crosstalk measure for the sub-streams.

40.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: <u>INFRINGEMENT OF U.S. PATENT NO. 7,656,845</u>

41.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

42.    For purposes of this Count III, the "Accused Products" include Defendant's computing devices, including, but not limited to, the Xirgo products that have the following identifiers **KP2, XT3100 Series, XG4600, AP1, and XT6300, XG3700, XT2500, XT2400, CRXS, CP4S, XT88, XT4700, XT6200, XT53, XT4900, XT4700, XT4500, XT2100, XG3700 XTCAN SDK, XG3700 LIGHT SDK, XG3700 LIGHT+ SDK, XG3700 STCAN SDK, XG3700 TACHO SDK, FMS500 LIGHT, FMS500 LIGHT+, FMS500 STCAN, FMS500 TACHO, XT2600, XG4780, XT4971A Series, XT6264, XT4600,** and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

43.    The USPTO duly issued U.S. Patent No. 7,656,845 (the "'845 patent") on February 2, 2010 after full and fair examination of Application No. 11/402,172 which was filed on April 11, 2006.  The '845 patent is entitled "Channel Interference Reduction."  A Certificate of Correction was issued on November 30, 2010.

44.    Fleet Connect owns all substantial rights, interest, and title in and to the '845 patent, including the sole and exclusive right to prosecute this action and enforce the '845 patent against infringers and to collect damages for all relevant times.

45.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '845 patent.

46.    The claims of the '845 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and

methods of wireless communication with a mobile unit.

47.    The written description of the '845 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

48.    Defendant has directly infringed the claims of the '845 patent through the end of its term by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products.  For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '845 patent through the end of its term. As just one example of infringement, the Accused Products used by Defendant provide a method for performing and/or an apparatus comprising a base station allocating at least one of a plurality of data channels to a first medium for data transmission via a wireless device; the base station allocating at least one remaining data channel of the plurality of data channels to a second medium for data transmission via the wireless device; and the base station dynamically adjusting, during data transmission, a number of the data channels assigned to one of the first and second media to remain within limits of a desired level of service.

49.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,742,388

50.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though

fully set forth in their entirety.

51.    For purposes of this Count IV, the "Accused Products" include Defendant's computing devices, including, but not limited to, the Xirgo products that have the following identifiers, **KP2, XT3100 Series, XG4600, AP1, and Xirgo CP4S-W 4-Channel HD Vehicle Recorder, and XT6300, XG3700, XT2500, XT2400, CRXS, CP4S, XT88, XT4700, XT6200, XT53, XT4900, XT4700, XT4500, XT2100, XG3700 XTCAN SDK, XG3700 LIGHT SDK, XG3700 LIGHT+ SDK, XG3700 STCAN SDK, XG3700 TACHO SDK, FMS500 LIGHT, FMS500 LIGHT+, FMS500 STCAN, FMS500 TACHO, XT2600, XG4780, XT4971A Series, XT6264, XT4600**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

52.    The USPTO duly issued U.S. Patent No. 7,742,388 (the "'388 patent") on June 22, 2010, after full and fair examination of Application No. 11/185,665 which was filed July 20, 2005. The '388 patent is entitled "Packet Generation Systems and Methods."

53.    Fleet Connect owns all substantial rights, interest, and title in and to the '388 patent, including the sole and exclusive right to prosecute this action and enforce the '388 patent against infringers and to collect damages for all relevant times.

54.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '388 patent.

55.    The claims of the '388 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

---

56.     The written description of the '388 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

57.     Defendant has directly infringed and continues to directly infringe the claims of the '388 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products.  For instance, Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '388 patent.  As just one example of infringement, Defendant performs a method including generating a packet with a size corresponding to a protocol used for a network transmission, wherein the packet comprises a preamble having a first training symbol and a second training symbol.  The method further includes increasing the size of the packet by adding subcarriers to the second training symbol of the packet to produce an extended packet, wherein a quantity of subcarriers of the second training symbol is greater than a quantity of subcarriers of the first training symbol; and transmitting the extended packet from an antenna.

58.     Defendant has indirectly infringed and continues to indirectly infringe the '388 patent by inducing others to directly infringe the '388 patent.  Defendant has induced and continue to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '388 patent by providing or requiring use of the Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '388 patent,

including, for example, claim 1. Such steps by Defendant has included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '388 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '388 patent. Defendant's inducement is ongoing.

59.     Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '388 patent. Defendant has contributed and continue to contribute to the direct infringement of the '388 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '388 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '388 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

60.     Defendant had knowledge of its infringement of the '388 patent at least as of the date when it was notified of the filing of this action.

61.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Fleet Connect's patent rights.

62.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

---

63.     Defendant's infringement of the '388 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

64.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

65.     Fleet Connect has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Fleet Connect has and will continue to suffer this harm by virtue of Defendant's infringement of the '388 patent.  Defendant's actions have interfered with and will interfere with Fleet Connect's ability to license technology.  The balance of hardships favors Fleet Connect's ability to commercialize its own ideas and technology. The public interest in allowing Fleet Connect to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT V: <u>INFRINGEMENT OF U.S. PATENT NO. 8,005,053</u>

66.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

67.     For purposes of this Count V, the "Accused Products" include Defendant's computing devices, including, but not limited to, the Xirgo products that have the following identifiers, **KP2, XT3100 Series, XG4600, AP1, XT6300, XT2500, XT88, XT4700, XT6200, XT4900, XT4700, XT4500, XT6264**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

68.     The USPTO duly issued U.S. Patent No. 8,005,053 (the "'053 patent") on August 23, 2011, after full and fair examination of Application No. 12/696,760, which was filed on January

29, 2010.  The '053 patent is entitled "Channel Interference Reduction."

69.    Fleet Connect owns all substantial rights, interest, and title in and to the '053 patent, including the sole and exclusive right to prosecute this action and enforce the '053 patent against infringers and to collect damages for all relevant times.

70.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '053 patent.

71.    The claims of the '053 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

72.    The written description of the '053 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

73.    Defendant has directly infringed the claims of the '053 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products.  For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '053 patent.  As just one example of infringement, Defendant offers a communication device for storing data encoded for a plurality of different wireless protocols, the communication device including a plurality of wireless transceivers, each of which is configured to transmit data according to a corresponding one of the plurality of different wireless protocols

where the communication device selects one of the plurality of different wireless protocols and encodes data of an unselected one of the plurality of different wireless protocols into the selected wireless protocol, and transmits the encoded data using the one of the plurality of wireless transceivers corresponding to the selected wireless protocol.

74.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,536,189

75.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

76.     For purposes of this Count VI, the "Accused Products" include Defendant's computing devices, including, but not limited to, the Xirgo products that have the following identifiers **KP2 AI camera, XT88, CP4S 4-Channel DVR, CRX, KP2-DFC-S, SVA055-AM, SVA050-A, SVA027-A, SVA037-A, SVA045-AM, SVA035-A, SVA034-AM, XT53, XT3100, XG3700, XT2400, XT2500, XT6300, and in-cab display/monitor SV7QLCD-T,** and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

77.     The USPTO duly issued U.S. Patent No. 7,536,189 (hereinafter, the "'189 patent") on May 19, 2009 after full and fair examination of Application No. 12/018,588 which was filed on January 23, 2008.  *See* '189 patent at 1.  The '189 patent is entitled "System and Method for Sending Broadcasts in a Social Network."

78.     Fleet Connect owns all substantial rights, interest, and title in and to the '189 patent, including the sole and exclusive right to prosecute this action and enforce the '189 patent against

infringers and to collect damages for all relevant times.

79.    The claims of the '189 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

80.    The written description of the '189 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

81.    Based upon information and belief, Fleet Connect is informed and believes that Defendant has directly infringed one or more claims of the '189 patent based by making, using, selling, offering to sell, and/or internal and external testing of the Accused Products.

82.    Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '189 patent.  As just one example of infringement, Defendant performs a method for a system administrator to broadcast an advisory communication to at least one remote unit, the method comprising: accessing a website by a system administrator to send an advisory communication, the website comprising an audio-visual interface for inputting the advisory communication; filtering a plurality of remote units by the system administrator operating the website, the filtering being based upon at least one information field to determine from the plurality of remote units at least one of a first remote unit and a second remote unit to receive a  broadcast of the advisory communication; assembling at least one packet of the advisory communication, the at least one packet comprising at least one

of: a first packet comprising a data message for the first remote unit, and a second packet comprising a voice message for the second remote unit; forwarding the at least one packet to a router for transmission; transmitting the at least one packet to alert at least one of the first remote unit and the second remote unit of the advisory communication; and storing, by the website, a log associated with the advisory communication.

83.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '189 patent.

84.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,599,715

85.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

86.    For purposes of this Count VII, the "Accused Products" include Defendant's computing devices, including, but not limited to, the **Xirgo Fleet Management Solution, Xirgo Fleet Management software/website, Xirgo Global Logistics software/website, Xirgo Asset Monitoring & Control, Xirgo Telematics Devices including the XT53, XT2100, XT4500, XT4700, XT4900, XT3100, XG3700, XT2400, XT2500, XT6300, KP2 AI camera, XT88, CP4S 4-Channel DVR, CRX, KP2-DFC-S, SVA055-AM, SVA050-A, SVA027-A, SVA037-A, SVA045-AM, SVA035-A, SVA034-AM,** and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

87.     The USPTO duly issued U.S. Patent No. 7,599,715 (hereinafter, the "'715 patent") on October 6, 2009 after full and fair examination of Application No. 12/389,245 which was filed on February 19, 2009.  *See* '715 patent at 1.  The '715 patent is entitled "System and Method for Matching Wireless Devices."

88.     Fleet Connect owns all substantial rights, interest, and title in and to the '715 patent, including the sole and exclusive right to prosecute this action and enforce the '715 patent against infringers and to collect damages for all relevant times.

89.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '715 patent.

90.     The claims of the '715 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

91.     The written description of the '715 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

92.     Based upon information and belief, Fleet Connect is informed and believes that Defendant has directly infringed one or more claims of the '715 patent by making, using, selling, offering to sell, and/or internal and external testing of the Accused Products.

93.     Upon information and belief, Defendant has directly infringed, either literally or

under the doctrine of equivalents, at least claim 31 of the '715 patent.  As just one example of infringement, Defendant performs a method of tracking vehicle maintenance information by a wireless communication system, comprising: receiving a signal transmitted by a vehicle comprising a mobile unit, the signal comprising a vehicle identifier and a status of the vehicle; storing the signal in a first communication log, the first communication log including the vehicle identifier, a transmission time, a transmission date, and the status; determining maintenance information associated with the vehicle, the determining comprises parsing the signal to determine the vehicle identifier and the status; constructing a communication comprising at least one communication packet, the at least one communication packet comprising the maintenance information, an address, and an identification of the vehicle; forwarding the at least one communication packet to a router; transmitting the at least one communication packet over the Internet by the router via the address; and  storing the communication through the Internet in a second communication log.

94.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

95.     Fleet Connect hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

96.     Fleet Connect requests that the Court find in its favor and against Defendant, and that the Court grant Fleet Connect the following relief:

    a.    Judgment that one or more claims of each of the Asserted Patents has been infringed,

either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.  A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '388 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents by such entities;

c.  Judgment that Defendant account for and pay to Fleet Connect all damages to and costs incurred by Fleet Connect because of Defendant's infringing activities and other conduct complained of herein;

d.  Judgment that Defendant's infringements of the '388 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>February 4, 2025</u>                   Respectfully submitted,

By:<u>*/s/ C. Matthew Rozier*</u>

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305, (202) 316-1591
Email: matt@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

*Attorneys for Plaintiff FLEET CONNECT SOLUTIONS LLC*

\* Admitted to the Eastern District of Texas